UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

GARY OQUENDO,

                            Plaintiff,

         -v-

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                            Defendant.
------------------------------------------------------------X

No. 12-cv-4527-RA-RLE

OPINION AND ORDER

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/19/14

RONNIE ABRAMS, United States District Judge:

*Pro se* plaintiff Gary Oquendo commenced this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. § 405(g), challenging a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for disability insurance benefits ("DIB") and supplemental security income ("SSI").[1] After Oquendo filed his complaint in this Court on June 8, 2012, the Commissioner moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Before the Court is the January 22, 2014 Report and Recommendation ("Report") of Magistrate Judge Ronald L. Ellis, which recommends granting the Commissioner's motion and dismissing the case, as well as Oquendo's objections to it. For the reasons set forth below, the Court adopts the thorough and well-reasoned Report in its entirety. Accordingly, the Commissioner's motion is granted, and the case is dismissed.

---

[1] The Court notes that, throughout nearly all of this case, Oquendo has proceeded *pro se*, despite being advised on numerous occasions by administrative law judges ("ALJs") that free legal resources were available to him and that he would likely benefit from legal representation. (AR 221-24, 376-77, 403-04, 744-46.) At one point, the New York City Medicaid Assistance Program appointed a legal representative, at no cost, to represent Oquendo, but he declined the representation. (Id. at 221-24.)

## BACKGROUND

As detailed at length in the Report, this case has had a complicated procedural history that spans almost nineteen years. Familiarity with the facts, which are set out in the Report, is assumed. In short, although his reported ailments have changed over time, Oquendo has repeatedly claimed disability due to chronic depression and anxiety, as well as debilitating neck and lower back pain. (Administrative Record ("AR") 472.) His medical records indicate that, at various times, he has indeed suffered from mental and physical impairments, including depression, substance abuse, back impairment, and a left heel spur. (Id. at 470.)

Oquendo first applied for SSI on September 15, 1995, claiming disability as of that date. (Id. at 47, 466.) The Commissioner's decision denying this application was remanded by the district court on three separate occasions for further analysis of various aspects of the medical evidence. (Id. at 173-78, 249-53, 494-96; No. 99 Civ. 1858, Dkt. 12, 22, 31.) Each time, upon further review, Oquendo's application was again denied. (AR 291-99, 205-14, 463-87.) Between the second and third district court remands, due to an administrative oversight by the Commissioner, Oquendo's application lay dormant for nearly six years from October 9, 2004 until June 8, 2010. (No. 99 Civ. 1858, Dkt. 24.)

While that application was dormant, Oquendo filed two new applications for DIB and SSI in April and May of 2009, in which he asserted for the first time that he had become disabled on August 22, 1980. (AR 467, 526-27.) These new applications were consolidated with his original application. (Id. at 467.) It is the Commissioner's denial of these consolidated applications that this Court reviews.

Oquendo's fifth and final administrative hearing was held on August 3, 2011, before ALJ Lucian A. Vecchio. (Id. at 742-72.) On November 4, 2011, ALJ Vecchio determined that Oquendo was not disabled within the meaning of the Act and denied his applications. (Id. at

463-87.) After Oquendo appealed unsuccessfully to the Appeals Council, he filed the instant action in this Court. (Id. at 458-60; No. 12 Civ. 4527, Dkt. 2.)

## STANDARD OF REVIEW

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). "The district court may adopt those portions of a report and recommendation to which no objections have been made, as long as no clear error is apparent from the face of the record." Francis v. A & E Stores, Inc., No. 06 Civ. 1638 (CS) (GAY), 2008 WL 4619858, at *1 (S.D.N.Y. Oct. 16, 2008). "[R]eview under the 'clearly erroneous' standard is significantly deferential, requiring a 'definite and firm conviction that a mistake has been committed.'" Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal., 508 U.S. 602, 623 (1993).

Where a party makes specific objections to a report and recommendation, however, the district court must "make a *de novo* determination of those portions of the record or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); see also Fed. R. Civ. P. 72(b)(3).

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). The substantial evidence standard is "a very deferential standard of review—even more so than the 'clearly erroneous' standard"—and permits the Court to reject the ALJ's factual findings "only if a reasonable factfinder would *have to conclude otherwise.*" Brault v. Soc. Sec. Admin., Com'r, 683 F.3d 443, 448 (2d Cir. 2012) (quoting Warren v. Shalala, 29 F.3d 1287, 1290 (8th Cir. 1994)) (emphasis in original).

3

## OBJECTIONS

Oquendo appears to raise four objections to Judge Ellis' Report: (1) the ALJ "improperly applied the grids," because "a person who has nonexertional problems . . . may not be evaluated on the grid" (Pl. Obj. at ECF 2); (2) the ALJ failed to apply the treating physician preference, placing too much weight on the opinions of non-treating physicians (id. at ECF 2-3); (3) the ALJ and the Magistrate Judge substituted their personal opinions for the medical evidence (id. at ECF 3); and (4) the ALJ erred in his evaluation of other evidence in the record (id.).[2] Along with his objections, Oquendo also submitted new evidence to the Court which was not previously presented to the Commissioner or to Judge Ellis. (Id. at ECF 5-10.)

### I. The ALJ's Use of the Medical-Vocational Guidelines

Oquendo claims that the ALJ "improperly applied the grids" and that "[a] person who has nonexertional problems . . . may not be evaluated on the grid." (Pl. Obj. at ECF 2.) Oquendo appears to argue that the ALJ erred in consulting the SSA's Medical-Vocational Guidelines ("the Grids"). Because ALJ Vecchio did not rely on the Grids, but, rather, relied on the testimony of a vocational expert, Oquendo's objection is unavailing.

For the purpose of making disability determinations, the Commissioner distinguishes between exertional limitations and nonexertional limitations:

> An exertional limitation is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only a claimant's ability to meet the strength demands of jobs (*i.e.,* sitting, standing, walking, lifting, carrying, pushing, and pulling). A nonexertional limitation is one imposed by the claimant's impairments that affect her ability to meet the requirements of jobs other than strength demands, and includes manipulative impairments and pain.

Rosa v. Callahan, 168 F.3d 72, 78 n.2 (2d Cir. 1999) (citations and internal quotation marks

---

[2] For ease of reference, any citations to specific pages of Plaintiff's Objections reflect page number designations made by the Court's Electronic Case Filing system.

omitted); see also 20 C.F.R. § 404.1569a. Oquendo has both exertional limitations—such as spine problems and a left heel spur—and nonexertional limitations—such as depressive disorder and polysubstance dependence. (AR 470.)

"[W]hen a claimant's nonexertional impairments significantly diminish his ability to work—over and above any incapacity caused solely from exertional limitations—so that he is unable to perform the full range of employment indicated by the [Grids], then the Secretary must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." Bapp v. Bowen, 802 F.2d 601, 603 (2d Cir. 1986); see also Roma v. Astrue, 468 F. App'x 16, 21 (2d Cir. 2012). Here, the ALJ did just that. Upon concluding that Oquendo's nonexertional impairments impeded his ability to perform the full range of work indicated by the Grids, the ALJ relied on the testimony of a vocational expert to determine whether any jobs existed in the national economy that Oquendo could perform. (AR 486 ¶¶ 49-50 (finding that the Grids would indicate Oquendo is "not disabled," but that "additional limitations" impede Oquendo's actual ability to perform sedentary work); 767-68 (stating his findings as to Oquendo's exertional and nonexertional limitations).) Melissa Fass-Karlin, the vocational expert, testified that Oquendo could perform light, unskilled jobs that exist in the local and national economies, such as those of an assembler of small products, machine tender, and marker. (Id. at 768-69.) The ALJ thus used the very approach mandated by Bapp. Accordingly, this objection must fail.

## II.   The ALJ's Assessment of the Medical Opinions

Oquendo also appears to argue that the ALJ failed to give sufficient weight to the opinion of his treating physician, Dr. Recaño, and relied too heavily on the opinions of the consultative physicians and the medical expert who testified at his administrative hearing. (See Pl. Obj. at ECF 1-2.) Oquendo asserts that Dr. Recaño "found [him] 'totally incapacitated'" and contends

5

that reports from the consultative physicians and the testifying medical expert "are found to be virtually worthless by the Courts." (Id.)

Although Oquendo presented evidence from several of his treating physicians, Dr. Recaño was the only physician who concluded that Oquendo was impaired for long enough to be disabled. (AR 95, 303, 339.) The opinion of a treating physician is not given controlling weight where it is inconsistent with other evidence in the record or unsupported by clinical findings. See Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (ALJ was correct to depart from treating physician rule when treating physician opinion was not informative and not consistent with those of other experts). If an ALJ does not give controlling weight to the opinion of a claimant's treating physician, the ALJ must provide adequate reasoning for such a departure from the rule. Snell v. Apfel, 177 F.3d 128, 133-34 (2d Cir. 1999) (remanding for ALJ's lack of consideration of treating physician report without adequate explanation).

ALJ Vecchio determined here that Dr. Recaño's opinion "does not merit any deference." (AR 476.) As Judge Ellis concluded, the ALJ did not err by not giving weight to Dr. Recaño's opinion. (Report at 26.) The ALJ gave specific, detailed reasons, noting that Dr. Recaño declined to respond to subpoenas for medical records, provided only short and conclusory statements relating to Oquendo's condition, and that his opinion was therefore "not supported by any medical evidence." (AR 95, 288, 303, 339-40, 351-53, 367, 476.) See also Kennedy v. Astrue, 343 F. App'x 719, 721 (2d Cir. 2009) (ALJ did not err in declining to give controlling weight where treating physician's opinion was "not supported by 'medical signs and laboratory findings' or accompanied by an 'explanation'") (citing 20 C.F.R. § 404.1527(d)(3)).

The ALJ also correctly concluded that Dr. Recaño's opinion is "contradicted by the record." (AR 476.) Dr. Recaño asserted that Oquendo was "totally incapacitated" from 1995 to 1996 due to fibromyalgia, and that he "could not work" in 2003 due to fibromyalgia, back pain,

6

and an emotional disorder. (AR 95, 339.) Not one out of the six consultative physicians who performed a physical examination of Oquendo concluded that his back condition would prevent him from working for an extended period, although each of them found that he had some degree of impairment. (See e.g., AR 147 (Ofra Blonder, M.D.); 148-49 (Igor Khelempsky, M.D.); 271-72 (Mariya Tsinis, M.D.); 348-50 (Antero Sarreal, M.D.); 645-47 (Louis Tranese, D.O.); 718-21 (Sharon Revan, M.D.).) Similarly, although Oquendo's consultative evaluations by psychologists and psychiatrists found various mental disorders and even "markedly impaired attention" due to marijuana use, none concluded that he had disabling mental illness which would render him incapable of working. (Id. at 150-52 (Solomon Miskin, Ph.D.); 343-45 (Robert Cicarell, M.D.); 732-35 (Arlene Broska, Ph.D.); 267-70, 641-44 (Herb Meadow, M.D.).) ALJ Vecchio did not err in relying on these reports, because the reports of consultative physicians may constitute substantial evidence adequate to support a decision contrary to the treating physician's opinion. See Petrie v. Astrue, 412 F. App'x 401, 405-06 (2d Cir. 2011); Vanterpool v. Colvin, No. 12 Civ. 8789 (VEC) (SN), 2014 WL 1979925, at *14 (S.D.N.Y. May 15, 2014); Guzman v. Astrue, No. 09 Civ. 3928 (PKC), 2011 WL 666194, at *9 (S.D.N.Y. Feb. 4, 2011).

ALJ Vecchio also consulted a medical expert, Dr. Leslie Fine, who testified that Oquendo's medical records indicate he has at all relevant times been able to perform "simple low stress work with minimal interaction with others" despite his impairments. (AR 762.) The ALJ noted that Dr. Fine is the only doctor who both reviewed the entirety of Oquendo's 30-plus year medical record and heard his testimony at the hearing. (Id. at 485.) The hearing transcript makes clear that Dr. Fine carefully and extensively reviewed Oquendo's medical evidence, and her opinion is supported by the consultative physicians' reports described above. (See id. at 757-763.) The applicable regulations "permit the opinions of nonexamining sources to override

7

treating sources' opinions provided they are supported by evidence in the record." Diaz v. Shalala, 59 F.3d 307, 313 n.5 (2d Cir. 1995).

Finally, Dr. Recaño's opinion that Oquendo could not work contradicted the findings of Oquendo's two more recent treating physicians. Dr. Fruitman, his psychiatrist, determined that Oquendo was "markedly limited" only in his ability to make complex work-related judgments, but two or more areas of marked limitation are required to establish a mental disability under the Act. See AR 471, 729; 20 C.F.R. § 404.1520a. In addition, as ALJ Vecchio noted, Dr. Martin— Oquendo's primary care doctor beginning in 2009—determined that Oquendo has bulging discs in his spine, but "there is no mention in Dr. Martin's progress notes of any complaints of, or treatment for, any of the severe pain in the back, neck, shoulder, thigh, knee, ankle or heel, or any of the physical (or mental) functional limitations upon which the claimant bases his claim of disability." (Id. at 477, 485, 632, 741.) It was thus not error for ALJ Vecchio to discount Dr. Recaño's opinion because, "the opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." Halloran, 362 F.3d at 32; see also Micheli v. Astrue, 501 F. App'x 26, 28-29 (2d Cir. 2012) (holding that it was not error for ALJ to decline to afford controlling weight to treating physician when opinion was internally inconsistent as well as inconsistent with other substantial evidence in the record); Stanton v. Astrue, 370 F. App'x 231, 234 (2d Cir. 2010) (holding that ALJ did not err in declining to give controlling weight to treating physician because it was "unsupported by objective clinical evidence" and contradicted by other record evidence) (citing 20 C.F.R. § 404.1527(d)(2)).

As the reports of the treating physicians Dr. Fruitman and Dr. Martin, the reports of the consultative physicians, and the testimony of the medical expert Dr. Fine constitute substantial

evidence contradicting Dr. Recaño's opinion and supporting ALJ Vecchio's finding that Oquendo is not disabled, his arguments to the contrary are unavailing.

### III. Whether the ALJ or the Magistrate Inserted their Personal Opinions

Oquendo argues that "[t]he Magistrate is not competent to make a medical judgment" and that he "incorrectly substituted his Medical Judg[]ment for the Judg[]ment of a doctor." (Pl. Obj. at ECF 3.) As Judge Ellis applied the correct standard of review and appropriately deferred to the ALJ's factual findings, this objection must also fail.

As stated above, a court reviewing a denial of benefits is required to determine whether the ALJ applied the correct legal principles, and if so, whether the decision is supported by substantial evidence in the record. See 42 U.S.C. § 405(g); Shaw, 221 F.3d at 131. "[T]he ultimate finding[s] of whether a claimant is disabled and cannot work . . . are 'reserved to the Commissioner.'" Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing 42 C.F.R. § 404.1527(d)). The court must give deference to the ALJ's credibility determinations as well, because the ALJ observed the medical testimony and the claimant's demeanor first-hand. See Pena v. Chater, 968 F. Supp. 930, 938 (S.D.N.Y. 1997); Mejias v. Soc. Sec. Admin., 445 F. Supp. 741, 744 (S.D.N.Y. 1978). The court must not substitute its own judgment for that of the ALJ. Melendez v. Astrue, 630 F. Supp. 2d 308, 316 (S.D.N.Y. 2009).

Here, Judge Ellis did not "come to his own conclusions as to [Oquendo's] abilities," as Oquendo suggests. (Pl. Obj. at ECF 3.) To the contrary, he thoroughly reviewed Oquendo's extensive medical history and concluded that ALJ Vecchio applied the correct legal standards and that his factual findings were based on substantial evidence. (Report at 29.) Rather than substituting his own opinion, Judge Ellis did just the opposite: he appropriately deferred to the ALJ's assessment of the evidence.

Nor did ALJ Vecchio "arbitrarily substitute his own judgment for competent medical

9

opinion." Marrero v. Apfel, 87 F. Supp. 2d 340, 347 (S.D.N.Y. 2000), aff'd sub nom. Davila-Marrero v. Apfel, 4 F. App'x 45 (2d Cir. 2001) (quoting Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998)). The ALJ based his decision that Oquendo was not disabled on the medical records and clinical findings of no fewer than nine consultative physicians, four of Oquendo's own treating physicians, the testimony of a vocational expert and the testimony of a medical expert. (AR 474-86.) ALJ Vecchio, accordingly, "did not substitute [his] medical judgment for any physician's evaluation, but . . . relied upon the substantial medical records and the testimony to reach a reasoned determination of the plaintiff's work capacity." Rodriquez v. Apfel, No. 96 Civ. 8330 (JGK), 1998 WL 150981, at *11 n.13 (S.D.N.Y. Mar. 31, 1998); see also Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (The ALJ "was entitled to weigh all of the evidence available to make [a] finding that was consistent with the record as a whole.").

## IV.  Consideration of Other Evidence

Reading the objections liberally, Oquendo also appears to argue that the ALJ did not adequately consider the side effects of his medication and gave too much weight to Oquendo's ability to walk and use public transportation. (Pl. Obj. at ECF 3.)

The ALJ did not fail to consider evidence of medication side effects. Oquendo asserts that he is "taking pain medication . . . which has side effects which can cause a heart attack, a stroke, swelling of the hands, feet, or ankles, kidney problems, liver problems[,] dizziness, shortness of breath, and trouble sleeping." (Id.) ALJ Vecchio adequately considered the evidence in the record that Oquendo experiences dizziness and trouble sleeping. He noted that "[t]he complaints of dizziness have not been substantiated by any clinical findings or diagnostic studies and, in any case, appear to have resolved spontaneously." (AR 481.) The ALJ also addressed Oquendo's testimony about his abnormal sleep patterns, recognizing that he suffers from a "longstanding depressive disorder, manifested chiefly by an inability to wake up in the

mornings, a lack of motivation to work, and anxiety when he is among people," (AR 472), but also observing that "[a]ll the mental health specialists, including the claimant's current treating psychiatrist, concluded that he has the ability to perform basic work-related mental tasks with some limitations," (id. at 485). To the extent that Oquendo is claiming that he suffers any of the other listed side effects as well—such as kidney or liver problems—this is the first time he has mentioned these symptoms and he has given no reason why he could not have raised them earlier. Any such new allegations cannot be considered now. See Brockway v. Barnhart, 94 F. App'x 25, 28-29 (2d Cir. 2004) (rejecting claim that ALJ ignored side effects of medication when records did not reflect complaints about such effects).

The ALJ also did not err by considering Oquendo's ability to perform activities of daily living. Oquendo contends that he "can be disabled even if [he] sometimes ride[s] the bus, or do[es] some walking," (Pl. Obj. at ECF 3), and he is correct that "[t]o receive benefits under the Social Security Act, one need not be completely helpless or unable to function . . ." Gold v. Sec'y of Health, Educ. & Welfare, 463 F.2d 38, 41 n.6 (2d Cir. 1972). The social security regulations and legal precedent establish that the ability to walk and take public transportation are highly relevant to disability determinations, in part, because "it would be difficult to base a finding that a claimant was 'not disabled' on a finding that she could perform jobs that she could not get to." Velasquez v. Barnhart, No. 04 Civ. 9017 (DLC), 2006 WL 3431190, at *4 (S.D.N.Y. Nov. 29, 2006) (citations omitted); see also 20 C.F.R. § 416.913(c)(1) (disability determination will take into account "your ability, despite your impairment(s), to do work-related activities such as sitting, standing, walking, lifting, carrying, handling objects, hearing, speaking, and traveling"); Aragon-Lemus v. Barnhart, 280 F. Supp. 2d 62, 69 (W.D.N.Y. 2003) (remanding in part because there was inadequate medical evidence regarding the claimant's "ability to walk, stand, sit, push, and pull, as well as . . . other nonexertional abilities").

11

Moreover, these were just two factors among the many that the ALJ considered, and there is no evidence to suggest that ALJ Vecchio was persuaded to find Oquendo not disabled solely based on his ability to travel.[3] To the contrary, the ALJ examined all the evidence and based his decision on the combination of hundreds of pages of medical records, expert testimony, and other hearing testimony.

As ALJ Vecchio did not fail to consider evidence that Oquendo suffers from side effects of medication or place too much reliance on the evidence that Oquendo can walk and ride the bus, this argument must too be rejected.

## V.     New Evidence

Lastly, Oquendo submitted the following new pieces of evidence with his objections: (1) a note dated June 19, 2013 from his treating physician Dr. Martin stating that Oquendo "suffers from bulging discs . . ., depression and insomnia"; (2) an MRI report dated September 23, 2009 stating that Oquendo has bulging discs in the lumbosacral spine, lower back pain, and "[s]traightening of the normal lordosis, which may be secondary to spasm"; (3) a discharge letter from a U.S. Army training center in Missouri dated March 20, 1979 stating that Oquendo was discharged for "apathy, defective attitude or inability to expend effort constructively"; (4) a letter from treating psychiatrist Dr. Fruitman dated December 11, 2012 stating that Oquendo "has been diagnosed with Depressive Disorder" and that Oquendo reports side effects of dizziness and

---

[3] Oquendo cites Carroll v. Sec'y of Health and Human Servs., 705 F.2d 638 (2d Cir. 1983), and Aubeuf v. Schweiker, 649 F.2d 107 (2d Cir. 1981), but these cases do not support his position. (Pl. Obj. at ECF 3.) In Carroll, the ALJ's finding that the claimant could perform sedentary work was not supported by substantial evidence, because one physician concluded that the claimant could not perform such work and the other three physicians expressed no opinion. 705 F.2d at 643. Here, by contrast, at least five physicians have examined Oquendo and found no impairments which would prevent him from performing sedentary work. (AR 148-49 (Igor Khelempsky, M.D.); 271-72 (Mariya Tsinis, M.D.); 348-50 (Antero Sarreal, M.D.); 645-47 (Louis Tranese, D.O.); 718-21 (Sharon Revan, M.D.).) In Aubeuf, the ALJ relied on the testimony of the claimant that he could carry out routine daily activities to rebut the opinions of his two treating physicians, even though the claimant's testimony was not, in fact, inconsistent with the physicians' opinions. 649 F.2d at 113-14. Here, Oquendo contradicted himself numerous times through his own hearing testimony and his statements to physicians. (See AR 483.)

forgetfulness from his medications, but that they help his depression; and (5) a prescription for nabumetone dated January 31, 2014 and the accompanying information sheet from Oquendo's pharmacy. (Pl. Obj. at ECF 5-11.)

When new evidence is presented after an ALJ's final decision, a court can remand a case when (1) the evidence is new and not merely cumulative of the evidence already in the record; (2) it is material, *i.e.* relevant to the period at issue and there is a reasonable possibility that it would influence the Commissioner to decide the case differently; and (3) there is good cause for not presenting it earlier. Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir. 1988). Because none of Oquendo's submissions meet these criteria, the Court will not remand for the Commissioner to consider them.

The 2009 MRI report and the note from Dr. Martin indicating that Oquendo suffers from bulging discs, depression, and insomnia are not material because they merely duplicate evidence that is already in the record. (AR 485, 471 (bulging lumbar discs); 343-44, 472, 732, 755-56 (depression and inability to sleep).) Oquendo has offered no reason why he did not previously present the Army discharge letter to the ALJ. See Schaal v. Apfel, 134 F.3d 496, 505-06 (2d Cir. 1998) (new evidence would not be considered because claimant did not show good cause for failing to present it previously). Finally, Dr. Fruitman's note and the prescription information both fall outside of the relevant time period ending November 4, 2011 and so they are not material. See Casiano v. Apfel, 39 F. Supp. 2d 326, 331-32 (2d Cir. 1999) (denying request for a remand when new medical records were not relevant to the time period in question); Perez v. Chater, 77 F.3d 41, 45 (2d Cir. 1996) (new and material evidence "must relate to the period on or before the ALJ's decision"). For the reasons stated above, the Court does not deem it appropriate to remand the case.

13

## CONCLUSION

The Court has reviewed *de novo* the portions of the Record to which Oquendo objects and has reviewed the remainder of the Report for clear error. The Court agrees with Judge Ellis' recommendations and, accordingly, adopts the Report in its entirety.

The Clerk of Court is respectfully requested to enter judgment and to close the case.

SO ORDERED.

Dated:   August 19, 2014
         New York, New York

_____
Ronnie Abrams
United States District Judge